JNK:sr

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6168-Cr-Ferguson(s)
18 USC § 371
18 USC § 1010
18 USC § 1341
18 USC § 1343
18 USC § 1956(a)(1)(A)
18 USC § 1956(h)
18 USC § 2

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MARK COHEN,
BRUCE HOLLANDER, and
JEAN LINDOR,

    Defendants.
_____/

## SUPERCEDING INDICTMENT

The Grand Jury Charges:

### COUNT ONE - CONSPIRACY

1. Beginning in or about December 1996, and continuing to at least September 1999, the exact dates being unknown, in Broward County, in the Southern District of Florida and elsewhere, the defendants,

MARK COHEN,
BRUCE HOLLANDER, and
JEAN LINDOR,

and others known and unknown to the Grand Jury did knowingly and willfully combine, conspire, confederate, and agree to commit the following offenses against the United States of America, that is:

(a) mail fraud, in violation of Title 18, United States Code, Section 1341;

(b) wire fraud, in violation of Title 18, United States Code, Section 1343; and

(c) making false statements to HUD, in violation of Title 18, United States Code, Section 1010.

## INTRODUCTION

At all times relevant to this Indictment:

2. The Department of Housing and Urban Development (HUD), through the Federal Housing Administration (FHA), an organization within HUD, is an agency of the United States government whose duties include guaranteeing loans to low income buyers in order to enable them to buy homes. HUD insures home mortgage loans underwritten by HUD certified banks and mortgage companies (hereinafter referred to as "lenders") to qualified buyers for the purchase of single family homes.

3. HUD would issue mortgage insurance certificates for each qualifying loan closed by the lenders upon submission to HUD of a case binder containing, among other things, closing documents and documents relating to the creditworthiness of the borrower, including the Uniform Residential Loan Application, verifications of employment, gift donor verification letters, pay stubs, IRS Forms W-2, factual credit reports, and letters of

2

alternative credit.

4. A HUD insured loan for the purchase of a person's primary residence required that a minimum cash investment be made by the borrower from his or her own funds of at least 3% of the purchase price to be used for closing costs and the down payment. HUD required the minimum cash investment in order to ensure that the borrower had an actual financial stake in the property, and would be more likely to maintain the mortgage commitment and less likely to fall into default. If the borrower did not have the funds personally, those funds could be provided to the borrower by certain persons and entities as a gift. However, the seller was not permitted to provide the funds to the borrower.

5. As part of the mortgage approval process, lenders required a title commitment from the closing agent containing the borrower's name, the lender's name, the amount of the loan, the person vested in title at the time the title commitment was submitted to the lender, the legal description of the property and a list of conditions that must be complied with prior to title insurance being issued.

6. At the closing of the property, the closing agent, acting for the lender, was required to prepare a settlement statement (Form HUD 1) showing the funds paid on behalf of the borrower and due to the seller. The Form HUD 1 also detailed the closing costs, proration, escrow deposits, mortgage amounts and obligations to be satisfied. The HUD-1 was signed at closing by the parties and the closing agent, who acknowledged that the HUD-1 represented a true account of the transaction. For a HUD insured loan an addendum to the HUD-1 would be also signed by the parties and the closing agent, who acknowledged that the HUD-1 was a true and accurate account of the funds received. The

addendum to the HUD-1 also contained a "Notice To All Parties" that if information is obtained which indicates that the source of the borrower's financial contribution is other than from the borrower or other than stated by the lender in its closing instructions, the closing agent was required to obtain written instructions from the lender before proceeding to closing.

7. Professional American Mortgage Institute (PAMI), TAB Mortgage Corporation (TAB), New America Financial, Aegis Mortgage Corporation (Aegis), Trinity Mortgage, Gold Coast Funding Group, Citrus State Mortgage, R.E.P. Financial, First Bankers Mortgage Services (First Bankers), Resource Bankshares Mortgage Group, Corinthian Mortgage Corporation (Corinthian), ABC Lending, The Bank of New York (Delaware), Texas Commerce Bank, Bank United, First State Bank, PNC Bank, and Pacific Southwest Bank are corporations that were engaged in the business of mortgage lending. During the course of funding a loan these corporations would send documents and other items to the lender and receive documents and other items from the lender, including funds for closing, by facsimile, wire transfer, and commercial interstate carrier.

8. MARK COHEN was a mortgage loan officer, who did business with PAMI, TAB, Gold Coast Funding Group, R.E.P. Financial, ABC Lending and Citrus State Mortgage Company.

9. ERIC SILVERMAN was a real estate investor and president of American Redevelopment Corporation (hereinafter ARC).

10. ARC was a Florida corporation located in Aventura, Florida, in the business of real estate investment.

4

11. BRUCE HOLLANDER was a licensed attorney and president of Automated Title Services, Inc., who acted as a closing agent and issued title insurance.

12. JEAN LINDOR worked with MARK COHEN and ERIC SILVERMAN and was an employee of ARC.

## OBJECT OF THE CONSPIRACY

13. It was the object of the conspiracy that the defendants and their coconspirators knowingly devised and executed a scheme to defraud and unlawfully enrich themselves and to obtain money from the lenders and obtain mortgage insurance from HUD by submitting and causing to be submitted false documentation, inducing them to fund and/or insure mortgages exceeding $11,100,000 to at least 120 borrowers.

## MANNER AND MEANS

14. It was part of the conspiracy that ERIC SILVERMAN incorporated American Redevelopment Corporation (ARC) to act as a real estate investment company to purchase single family homes that would immediately be resold, or "flipped," at inflated prices to borrowers whom MARK COHEN, ERIC SILVERMAN, and others, assisted in qualifying for mortgage loans through false and fictitious means.

15. It was further part of the conspiracy that in order to attract borrowers, ARC utilized the services of JEAN LINDOR and others as recruiters and placed advertisements in local publications. Borrowers were promised that they could purchase a house for a $1,000 down payment and monthly mortgage payments comparable to their current monthly rental payments. MARK COHEN, JEAN LINDOR and others interviewed

5

borrowers as to their financial status in order to determine the price range of houses that they would be offered. MARK COHEN reviewed the borrowers' financial information to determine what false and fictitious documentation was necessary for the potential borrower to qualify for a FHA insured mortgage loan.

16. It was further part of the conspiracy that a coconspirator, acting as the real estate agent for ARC, showed borrowers homes based on a price range provided to him by MARK COHEN. When the borrower selected a home, the coconspirator negotiated a purchase/sales contract with the homeowner on behalf of ARC. At the direction of MARK COHEN, the price was then inflated an average of approximately $14,000 and the borrower signed a purchase/sales contract for the home reflecting ARC as the seller.

17. It was further part of the conspiracy that defendants MARK COHEN, ERIC SILVERMAN, JEAN LINDOR, and others, created and caused to be created, false and fraudulent documents, including verification of employment forms, letters of alternative credit, letters documenting gifts from borrowers' relatives, IRS Forms W-2, Uniform Residential Loan Application forms, and pay stubs to be placed into the borrowers' loan files so the borrower would appear to qualify for an FHA insured mortgage loan.

18. It was further part of the conspiracy that MARK COHEN created and caused to be created false businesses, including Levo Import Export Company and International Design Company of Miami, which were identified as employers on borrower loan applications. MARK COHEN also created, and caused to be created, telephone numbers and voice mail boxes for these businesses to make them appear legitimate. In addition, JEAN LINDOR falsely represented himself as management for those businesses and

verbally verified employment for borrowers that were not employed at those businesses.

19. It was further part of the conspiracy that MARK COHEN and ERIC SILVERMAN utilized the services of BRUCE HOLLANDER as an attorney and a closing agent who provided title commitments that were false and fictitious as to the true owner of record, and failed to list that a warranty deed had to be issued from the actual seller to ARC, and thereby HOLLANDER did knowingly conceal information from the lender and allow ARC to sell properties that it did not own.

20. It was further part of the conspiracy that to make good on its promise of purchasing a home for only $1,000 out-of-pocket, ARC provided the funds for cash gift donations, misrepresenting the funds as gifts from relatives. ERIC SILVERMAN, JEAN LINDOR and other coconspirators would go to various banks and deposit ARC funds into the accounts of borrowers' friends and relatives, and then would have the funds withdrawn in the form of cashier's checks used to represent gift donations at closing. At closing BRUCE HOLLANDER would falsely sign and caused to be signed the HUD-1 and the addendum to the HUD-1 knowing that the borrower's financial contribution was coming from the seller, ARC, and not from the borrower or his relatives. BRUCE HOLLANDER would then issue a check at closing reimbursing either ERIC SILVERMAN or ARC for payment of the gift funds. In several instances BRUCE HOLLANDER would not receive the check for purported gift funds listed in the HUD-1until after the transaction would close.

**OVERT ACTS**

21. In furtherance of the conspiracy, and to effect its objectives, the following overt acts, among others, were committed by the defendants and coconspirators within the Southern District of Florida.

### LUZ ORTIZ TRANSACTION

a. On or about May 13, 1997, MARK COHEN caused to be created a false Verification of Employment form (International Design Company of Miami) for submission to the lender and HUD.

b. On or about May 13, 1997, a coconspirator created and caused to be created a false payroll stub regarding International Design Company of Miami for submission to the lender and HUD.

c. On or about May 13, 1997, MARK COHEN caused to be created false IRS forms W-2 for submission to the lender and HUD.

d. On or about May 13, 1997, ERIC SILVERMAN provided $5,402 that was used as the gift donation.

e. On or about June 3, 1997, BRUCE HOLLANDER issued a false title commitment for submission to the lender.

f. On or about June 6, 1997, both ERIC SILVERMAN and BRUCE HOLLANDER signed the HUD 1 Settlement Statement Addendum.

### JEAN DIMANCHE TRANSACTION

g. On or about June 17, 1997, MARK COHEN created and caused to be created a false Verification of Employment form for submission to the lender and HUD.

8

h. On or about June 17, 1997, MARK COHEN created a false Gift Funds Verification Letter for submission to the lender and HUD.

i. On or about June 17, 1997, a coconspirator created and caused to be created a false payroll stub regarding the Savoy Hotel for submission to the lender and HUD.

j. On or about June 18, 1997, BRUCE HOLLANDER issued a false title commitment for submission to the lender.

k. On or about June 26, 1997, ERIC SILVERMAN made a false statement on the HUD 1 Settlement Statement Addendum, which was later submitted to HUD.

l. On or about June 27, 1997, JEAN LINDOR deposited $4,036 in ARC funds into his personal bank account and immediately withdrew it in the form of a cashier's check, and used this check to represent a gift from himself to Jean Dimanche.

### ANIBAL GEORGES TRANSACTION

m. On or about September 5, 1997, BRUCE HOLLANDER issued a false title commitment for submission to the lender.

n. On or about September 11, 1997, BRUCE HOLLANDER signed a check issued to ERIC SILVERMAN in the amount of $4,540, in which the memo section reflects "Gift Funds."

o. On or about September 12, 1997, ERIC SILVERMAN obtained a cashier's check in the amount of $4,540 in which the memo section reflects "Gift to A. Georges."

### CAROLINE URUEJOMA TRANSACTION

p. On or about September 9, 1997, BRUCE HOLLANDER issued a false title commitment for submission to the lender.

9

q. On or about September 12, 1997, BRUCE HOLLANDER signed a check issued to ARC in the amount of $4,000, in which the memo section reflects "net proceeds."

r. On or about September 12, 1997, ERIC SILVERMAN obtained a cashier's check in the amount of $4,000 in which the memo section reflects "Gift to Uruejoma."

### WILLIE MAE MIKE TRANSACTION

s. On or about October 9, 1997, BRUCE HOLLANDER issued a false title commitment for submission to the lender.

t. On or about November 19, 1997, BRUCE HOLLANDER signed a check issued to ERIC SILVERMAN in the amount of $5,000, in which the memo section reflects "net proceeds."

u. On or about November 20, 1997, ERIC SILVERMAN obtained a cashier's check in the amount of $5,000 in which the memo section reflects "Louise Davis (Gift to Mike)."

v. On or about November 19, 1997, BRUCE HOLLANDER signed the HUD 1 Settlement Statement.

All in violation of Title 18, United States Code, Section 371.

### COUNTS 2-6 WIRE FRAUD

22.     The allegations set forth in paragraphs 2 through 21 of this Indictment are incorporated herein by reference as though fully set forth herein.

23.     On or about the dates enumerated as to each count, at Broward and Miami-Dade Counties, in the Southern District of Florida, and elsewhere, for the

purpose of executing, and in furtherance of the aforesaid scheme and artifice to defraud and for obtaining money and property by false and fraudulent pretenses, representations and promises, and attempting to do so, defendants,

**MARK COHEN and
BRUCE HOLLANDER**,

did knowingly and willfully transmit and cause to be transmitted in interstate commerce by means of wire communications certain signals and sounds, as more particularly described below:

| COUNT | FILE | DATE | WIRE COMMUNICATION |
|---|---|---|---|
| 2 | Moise | 12/15/97 | A facsimile of a Fund Commitment Form was sent from the Southern District of Florida to Corinthian in Kansas |
| 3 | Rodriguez | 10/17/97 | A facsimile of a HUD-1 was sent from the Southern District of Florida to Corinthian in Kansas |
| 4 | Georges | 9/11/97 | A wire transfer of funds for closing to the Southern District of Florida from outside the State of Florida |
| 5 | Mike | 11/19/97 | A wire transfer of funds for closing to the Southern District of Florida from outside the State of Florida |
| 6 | Carswell | 11/24/97 | A wire transfer of funds for closing to the Southern District of Florida from outside the State of Florida |

All in violation of Title 18, United States Code, Sections 1343 and 2.

### COUNTS 7-12   FALSE STATEMENTS TO HUD

24. The allegations set forth in paragraphs 2 through 21 of this Indictment are incorporated herein by reference as though fully set forth herein.

25. On or about the dates enumerated below, at Broward and Miami-Dade Counties, in the Southern District of Florida and elsewhere, the defendants enumerated

11

below, for the purpose of obtaining loans from the corporations enumerated below, did, for the following transactions, knowingly and willfully make, pass, utter and publish statements, as described below, knowing the same to be false, and with the intent that such loans be offered to, and accepted by HUD for insurance and for the purpose of influencing the actions of HUD:

| CT | DEFENDANTS | FILE | DATE | FALSE DOCUMENTS | CORPORATIONS |
|---|---|---|---|---|---|
| 7 | COHEN, HOLLANDER, and LINDOR | Ortiz | 6/6/97 | VOE, Gift Fund Verification Letter, Payroll stubs, HUD 1 Settlement Statement & Addendum, Fund Commitment Form | PAMI, AEGIS MORTGAGE, and BANK UNITED |
| 8 | COHEN, HOLLANDER, and LINDOR | Dimanche | 6/26/97 | VOE, Gift Fund Verification Letter, Payroll stubs, HUD 1 Settlement Statement & Addendum, Fund Commitment Form | PAMI, FIRST BANKERS, and PNC BANK |
| 9 | COHEN and HOLLANDER | Betye | 5/22/97 | VOE, Gift Fund Verification Letter, Payroll stubs, HUD 1 Settlement Statement & Addendum, Fund Commitment Form | PAMI, CORINTHIAN |
| 10 | COHEN, HOLLANDER, and LINDOR | Uruejoma | 6/6/97 | Gift Fund Verification Letter, HUD 1 Settlement Statement & Addendum, Fund Commitment Form | PAMI, AEGIS MORTGAGE, and BANK UNITED |
| 11 | COHEN, HOLLANDER, and LINDOR | Francois | 9/25/97 | Gift Fund Verification Letter, HUD 1 Settlement Statement & Addendum, Fund Commitment Form | PAMI, CORINTHIAN |

12

| CT | DEFENDANTS | FILE | DATE | FALSE DOCUMENTS | CORPORATIONS |
|---|---|---|---|---|---|
| 12 | COHEN, HOLLANDER, and LINDOR | Ducatel | 1/7/98 | Gift Fund Verification Letter, HUD 1 Settlement Statement & Addendum, Fund Commitment Form | PAMI, CORINTHIAN |

All in violation of Title 18, United States Code, Sections 1010 and 2.

## COUNT 13-MONEY LAUNDERING

26. The allegations contained in paragraphs 2 through 21 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

27. From in or around July 1997, to in or around January 1998, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

BRUCE HOLLANDER,

did knowingly combine, conspire, confederate and agree with others known and unknown to the Grand Jury to conduct and attempt to conduct financial transactions affecting interstate commerce by issuing checks from account number 7178039538 in the name of Automated Title Services at American Bank of Hollywood, which involved the proceeds of a specified unlawful activity, that is, mail fraud and wire fraud, with the intent to promote the carrying on of said specified unlawful activity, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of

13

unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

All in violation of Title 18, United States Code, Section 1956(h).

A TRUE BILL

FOREPERSON

GUY A. LEWIS
UNITED STATES ATTORNEY

JEFFREY KAPLAN
ASSISTANT UNITED STATES ATTORNEY

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. __00-6168-Cr-WDF(s)__ |
|---|---|
| v. | **CERTIFICATE OF TRIAL ATTORNEY*** |
| MARK COHEN, et al. | **Superseding Case Information**: |

**Court Division**: (Select One)          New Defendant(s)      Yes ___  No _X_
                                          Number of New Defendants   ___
___ Miami   ___ Key West                  Total number of counts     ___
_X_ FTL     ___ WPB  ___FTP

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:          (Yes or No) NO _____
   List language and/or dialect _____

4. This case will take __6__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                    (Check only one)

   I    0 to 5 days       ___     Petty      ___
   II   6 to 10 days      _X_     Minor      ___
   III  11 to 20 days     ___     Misdem.    ___
   IV   21 to 60 days     ___     Felony     _X_
   V    61 days and over  ___

6. Has this case been previously filed in this District Court? (Yes or No) YES
   If yes:
   Judge: Ferguson _____   Case No. 00-6168 _____
   (Attach copy of dispositive order)

   Has a complaint been filed in this matter? (Yes or No) __NO_____
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____  District of _____

   Is this a potential death penalty case? (Yes or No) _____ NO _____

7. Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999? _X_ Yes ___ No   If yes, was it pending in the Central Region? _x_ Yes ___ No

8. Did this case originate in the Narcotics Section, Miami? ___ Yes _X_ No

JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY
Court No. A500030

REV.6/27/00

REV.6/27/00

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PENALTY SHEET**

Defendant's Name: <u>JEAN LINDOR</u>     No.:_____

Count #l        Conspiracy to Commit Bank Fraud, False Loan Statements and False Statements to Hud (18 USC 371)

*Max Penalty:   5 years' imprisonment; $250,000 fine

Counts 7, 8, 10, 11, 12.   False statements to HUD (18:1010)

Max Penalty:    2 years' imprisonment; $250,000 fine

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: MARK COHEN      No.:_____

Count #l            Conspiracy to Commit Bank Fraud, False Loan Statements and False Statements to Hud (18 USC 371)

*Max Penalty:       5 years' imprisonment; $250,000 fine

Counts #2-6:        Wire Fraud (18:1343)

*Max Penalty:       Up to five years' imprisonment; $250,000 fine

Counts 7-12         False Statements to HUD (18:1010)

Max Penalty:        2 years' imprisonment; $250,000 fine

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: <u>BRUCE HOLLANDER</u>   No.:_____

Count #I   Conspiracy to Commit Bank Fraud, False Loan Statements and False Statements to Hud (18 USC 371)

*Max Penalty:   5 years' imprisonment; $250,000 fine

Counts #2-6:   Wire Fraud (18:1343)

*Max Penalty:   Up to five years' imprisonment; $250,000 fine

Counts 7-12   False Statements to HUD (18:1010)

Max Penalty:   2 years' imprisonment; $250,000 fine

Count 13   Money Laundering conspiracy (18:1956(h))

*Max Penalty   20 years' imprisonment; $500,000 fine

No. _____

# UNITED STATES DISTRICT COURT
**Southern** District of **Florida**
Central Criminal Division

## THE UNITED STATES OF AMERICA

vs.

MARK COHEN, et al

## INDICTMENT

18 USC 371, 1010, 1341, 1343, 1956 and 2

A true bill.

_____
Foreperson

Filed in open court this

_____ day

of _____ A.D. 19___

_____
Clerk

Bail, $ _____