UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6168-CR-HURLEY/VITUNAC (s)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JEAN LINDOR,

        Defendant.
_____/

## GOVERNMENT'S OPPOSITION TO DEFENDANT LINDOR'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

The United States of America, by and through its undersigned counsel, hereby files its opposition to defendant Lindor's objections to the presentence investigation reoprt (PSI), and states as follows:

1. In or about June 2000 defendant Lindor and eleven (11) others were charged by indictment or information related to a mortgage fraud scheme perpetrated by Marc Cohen and Eric Silverman. In September 2001 the defendant, along with Cohen and Bruce Hollander, were charged in a thirteen (13) count superseding indictment. Defendant Lindor was charged with one count of conspiracy to commit mail and wire fraud and making false statements to HUD and five counts of making false statements to HUD.

2. In or about late-1996 co-defendant Mark Cohen went into partnership with co-defendant Eric Silverman. They would solicit unsophisticated, generally first time home buyers to purchase homes. Cohen worked for a mortgage broker called PAMI in Broward County, Florida, and would

1

help obtain loans for the buyers to purchase the homes. These loans were made with approximately a dozen different lending institutions, and most of the loans were insured by the Department of Housing and Urban Development. However, the buyers would not qualify for the loans as they would not be making sufficient income or would not have been employed for a sufficient period of time, or would not have sufficient assets to afford the down payment. In order to obtain the loans Cohen, Silverman and their coconspirators would submit false documents to the lenders to support sufficient income and assets for the buyers in order to allow the buyers to obtain the loan. The co-defendants who assisted co-defendant Cohen in executing the false documents included defendant Lindor, co-defendant Jean Dufresne, Christie Galluci (Case No. 00-6167-Cr-Ferguson), who worked with Cohen at PAMI, Lee Garber (00-6178-Cr-Zloch), who was a "gofer" for Cohen, and defendant Lindor's former girlfriend, Marie LaFargue. Co-defendant Paul Saltz was a printer who printed false W-2 forms and pay stubs for the buyers.

    3.    Co-defendants Cohen and Silverman would buy the properties and "flip" the properties to the buyers after closing on the purchase for a profit of around $15,000. These property "flips" could be legal if they are disclosed to the lender. Cohen and Silverman would not disclose the property "flip" to the lender. In order to ensure that the lender would not discover the property "flip" Cohen and Silverman used title companies who would prepare the title commitment papers in a manner that would not disclose the property "flip." These title companies included Security Title, which was owned by co-defendant Kenneth Heyder and where Ken Duquette (Case No. 00-6179-Cr-Ferguson) worked as a marketing representative and Annette Gonzalez (Case No. 00-6176-Cr-Zloch) worked as a clerk, and Automated Title, which was owned by co-defendant Bruce Hollander.

4. Defendant Lindor's role in the scheme is that he would solicit buyers to purchase houses. He also executed false verifications of employment for the buyers and would facilitate the filing of false gift letters. The defendant was paid by check by co-defendant Silverman and in cash by co-defendant Cohen. The defendant began receiving checks from co-defendant Silverman on or about June 24, 1997. The checks are generally in the amount of $400. The memo section of the checks indicate that the checks are for referral fees and for weekly salary. The attached list (Government's Exhibit 1) indicates that for the six-month period from June 24, 1997 through January 20, 1998, defendant Lindor received approximately $12,000 in salary and referral fees in checks from co-defendant Lindor. This chart does not include the amount the defendant received in cash from co-defendant Cohen.

5. In mid-1999 the scheme began to unravel after agents approached co-defendant Silverman. He cooperated and informed the government about the others involved in the scheme. In August 1999 the agents went to speak to defendant Lindor to seek his cooperation. Defendant Lindor did not agree to cooperate, and instead lied to the government. In particular, he lied about moneys he gave to various buyers, which he claimed were gifts from his savings to buyers to buy the properties. In fact, these were moneys, as the defendant now admits, which were given to him by co-defendant Silverman, in order make it appear to the lender that the funds were gifted. The government then went to others, including Ken Duquette, Annette Gonzalez, and Christie Galluci and sought and received their cooperation.

6. In June 2000 this case was indicted by another prosecutor. In total the scheme involved approximately 125 properties. A number of the indicted defendants indicated a willingness to plead guilty. In calculating the loss the prior prosecutor looked at the "flip" amount

of approximately $15,000 and utilized that amount as the expected loss on each transaction. Depending on the duration of a co-defendant's participation in the conspiracy, the loss figures were very large. Co-defendant Dufrense was held responsible for a loss of $975,000, co-defendant Saltz was held responsible for a loss of $1,960,000, and co-defendant Garber was held responsible for a loss of $869,108. The actual loss at the time was approximately $150,000. Due to the rise in the housing prices and the reduction in interest rates there were fewer actual losses to the lending institutions. Now, almost ten years later, almost all the properties have either been sold, refinanced or foreclosed. Thus, an actual loss can be calculated. The government determined the actual loss pertaining to this defendant to be $180,929.26. However, if the defendant had been sentenced in 2001 with defendants Dufresne and Garber, his loss would have been at least double and probably similar to the losses of Dufresne and Garber of approximately $800,000 to $900,000.

7.  Defendant files his objections to the PSI claiming that he should be entitled to a reduction to his guideline range for minor role and that he should not be enhanced two points for more than minimal planning.

## The Defendant Should Be Enhanced For More than Minimal Planning

8.  For offenses committed prior to November 2001, a defendant's offense level is enhanced two points if the offense involved more than minimal planning or a scheme to defraud more than one victim. First, it is clear that this was a scheme to defraud more than one victim. As set forth in paragraph 7 on page 4 of the superseding indictment, this was a scheme to defraud over a dozen lending institutions. These lending institutions insured many, but not all of their loans, through HUD. The lenders lent their money based on false documents and other false information sent by the defendant and his co-conspirators.

9.    Application note 4 to Section 2F1.1 of the Sentencing Guidelines (2000) states that a victim refers to a "person or entity from which the funds are to come directly." In this case the lenders set forth in paragraph 7 are all victims as the funds all came from them directly. Further, the scheme involved loans that were both HUD insured and conventional loans. Even though only HUD was ultimately victimized, the lenders on the conventional loans all faced potential losses. Thus, there was clearly more than one victim.

10.    Also, there was more than minimal planning under Section 2F1.1(b)(2)(B). The offense took place over a two and a half year period and involved approximately 125 properties. Each loan involved false W-2 forms and pay stubs, false verifications of employment, and many involved false gift letters. The scheme involved twelve different defendants. It is inconceivable that a scheme this large does not involve more than minimal planning.

11.    The defendant's arguments regarding more than minimal planning are ill-conceived. Defendant argued that his role in the offense did not involve more than minimal planning. However, the enhancement does not look at an individual's role in the offense, it looks at the offense itself. As stated in Section 2F1.1(b)(2) the enhancement applies if "the offense involved (A) more than minimal planning." There is nothing to suggest that the enhancement is determined by the defendant's role in the offense. Even, assuming, arguendo, that the enhancement did consider the defendant's role in the offense, the enhancement would still be applicable, as the defendant was involved in the offense from 1997 through 1999, and executed a number of fraudulent verifications of employment and was involved in a number of fraudulent gift transactions. The defendant also referred a number buyers to the scheme. As the defendant was involved in a number of repeated acts over a period of time, which were clearly not opportune, the enhancement for more than minimal

planning is appropriate.

12.     The defendant also makes equitable arguments as to why he believes more than minimal planning should not be applicable. The defendant argues that, since the enhancement was eliminated by the Sentencing Commission in November 2001, the Court should exercise its discretion not to apply the enhancement. In November 2001, the Sentencing Commission not only eliminated the enhancement for more than minimal planning, but overhauled the manner in which defendants charged in fraud cases would be sentenced. The Sentencing Commission substantially raised the points credited for the losses caused by defendants. If the defendant were sentenced (which he could ask for the 2006 Guideline Book to apply) the points accorded the loss for which the defendant is responsible in this case of approximately $180,000 would increase from 7 to 10 points. Thus, even if the defendant did not receive the adjustment for more than minimal planning, the defendant's offense level under the 2006 guidelines would still be greater by one point. The defendant is, in essence, asking the court to take the provisions he likes from the current guidelines, but sentence him under the 1998 guidelines. You are not allowed to pick and choose in this fashion. Thus, defendant's equitable request should not be granted.

<u>The Defendant Should Not Receive an Adjustment For Role in the Offense</u>

13.     The defendant makes an equitable argument in his request for a minor role in the offense, which argument he also made in asking that the enhancement for more than minimal planning not apply. The defendant argues that other defendants received adjustments for minor role and did not get an enhancement for more than minimal planning. These defendants were arrested and pled guilty in 2000. As noted above, the government used estimated loss figures at that time that were substantially larger. For example, Paul Saltz was a printer who was paid $10 for a false

W-2 and $10 for a false pay stub. Saltz received approximately $2,500 from the entire scheme. The amount of loss attributed to co-defendant Saltz was $1,960, 896.98. Given the large loss (which had been stipulated to in the plea agreement) the Court felt that the guidelines were too high and an adjustment was warranted.

14.     Significantly, while the court made various adjustments, co-defendant Dufresne still received a sentenced of twelve months and a day, co-defendant Saltz received a sentence of 16 months, Lee Garber received a sentence of 12 months and a day. As further explained below, all the defendants who did not cooperate and were charged with the same offense as the defendant all received sentences of at least 12 months and a day, regardless of the adjustments. Thus, none of the other similarly situated defendants received a sentence less than twelve months as suggested by the defendant. Thus, there is no equitable reason to further reduce the defendants guideline sentence, and the defendant should not be given an adjustment for minor role.

<u>The Defendant Should Be Sentenced Within the Guideline Range</u>

15.     The Defendant alleges that a sentence imposed within the guideline range would not be reasonable as there are disparities among the sentences of co-defendants. The defendant points to four defendants who received probationary sentences; Kenneth Heyder; Kenneth Duquette; Annette Gonzalez; and Christie Galluci. Duquette, Gonzalez, and Galluci all cooperated with the government and received downward departures either under Guideline Section 5K1.1 or under Rule 35 of the Federal Rules of Criminal Procedure. The defendant did not cooperate. Co-defendant Heyder pled guilty to obstruction of justice, not to the conspiracy that the defendant was charged. The offense level for co-defendant Heyder under the guidelines of obstruction of justice was calculated to be a level 12, not a level 15, as determined for the defendant.

7

16.    There were three defendants who were similar to the defendant who pled guilty to the same conspiracy and did not receive a downward departure for substantial assistance; Jean Dufresne; Lee Garber; and Paul Saltz. Dufresne and Garber each received a sentence of 12 months and a day and Saltz received a 16 month sentence. Garber was merely a gofer who did false verifications at co-defendant's Cohen's behest. Dufresne was a real estate broker who also did false verifications and received commissions on some of the sales. They both engaged in much of the same type of unlawful conduct as the defendant. However, unlike Dufresne and Garber, the defendant also enhanced the conspiracy by bringing additional buyers for whom he received a referral fee (See Exhibit 1). Thus, contrary to the allegations of the defendant, these individuals were not any more culpable than the defendant.

17.    The defendant also raises that co-defendant Silverman, who, along with Cohen, was the most culpable of the defendants, received a sentence of 12 months and a day. Silverman's guideline range was 33-41 months. Silverman received a downward departure for his cooperation, which included his testimony at co-defendant Hollander's trial and his assistance in helping the government prosecute the other eleven defendants. The court went beyond the government's recommendation in imposing the sentence of 12 months and a day. However, the case of co-defendant Silverman is not comparable to the defendant's case due to co-defendant Silverman's substantial cooperation.

18.    The defendant next claims that he is entitled to a downward departure under Section 5K2.20 of the Sentencing Guidelines because his criminal conduct represents aberrant behavior. In order to be an aberrant act, the conduct must be a single criminal occurrence or a single criminal transaction that was; committed without significant planning; was of limited duration; and represents

a marked deviation of an otherwise law-abiding life. See Application Note 1 and see also U.S. v. Bush, 126 F.3d 1298 (11th Cir. 1997). In this case there is a series of criminal transactions of duration that lasted approximately one and a half years. The defendant's participation was not of limited duration. Further, as noted in Bush, 126 F.3d at 1301, fn3, aberrant behavior "will not normally be available in cases where the 'more than minimal planning' enhancement is imposed." Thus, the defendant is not entitled to a downward departure for aberrant behavior.

      19.    Lastly, the defendant alleges that he should receive a downward departure as the loss overstates the seriousness of the offense. To the contrary, the loss probably understates the seriousness of the offense. The loss attributed to the defendant is only $180,000 for six properties. The defendant was involved in fraud with many more properties. However, due to rising housing prices and lower interest rates since 1997, the losses on the properties were substantially reduced. The defendant should not be entitled to a departure as the amount of the loss does not overstate the seriousness of the offense.

Conclusion

20. For the foregoing reasons, the defendant's objections to the PSI and his motion for downward departure should be denied. As the guideline range of 12-18 months is reasonable, the defendant should be sentenced to the same sentence as two other similarly situated defendants of 12 months and a day.

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

BY: s/Jeffrey N. Kaplan
JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY
ID. No. A5500030
500 East Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33394
Telephone No. (954) 356-7255, ext. 3515
Telefax No. (954) 356-7255
jeffrey.kaplan@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Government's Response to Defendant Lindor's Objections to the Presentence Investigation Report was served this 14th day of March, 2007, on Marc David Seitles, Esq., Alfred I. DuPont Building, 169 East Flagler Street, Suite 1200, Miami, Florida 33131 and Sheila Tierney, United States Probation.

s/Jeffrey N. Kaplan
JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY